John K. Teaford et al. * v. Commissioner. Teaford v. Commissioner
Docket Nos. 25860, 30578, 30593-30596.
United States Tax Court
T.C. Memo 1955-265; 1955 Tax Ct. Memo LEXIS 73; 14 T.C.M. (CCH) 1052; T.C.M. (RIA) 55265; September 28, 1955
*73 Petitioners, together with other parties, owned 50 per cent of the partnership known as Teaford, Danches and Company. On November 6, 1943, petitioners and such other persons, known as the Teaford faction, collectively entered into a written agreement relating to the sale of their interests to the so-called Danches faction. Upon being apprised of the agreement, the Bank, to which the partnership was heavily indebted, refused to acquiesce in the agreement and insisted upon a new agreement, executed November 18, 1943, providing for the continued existence of the partnership as then constituted until the Bank in its uncontrolled discretion gave its consent to a dissolution or until the indebtedness was retired. The consideration in both agreements was $387,500 over and above capital investment, which amount was stated to be half the estimated partnership profits for 1943. The actual partnership income for the year was somewhat less than estimated. The indebtedness to the Bank was retired some time after 1943. Held: The agreement of November 18, 1943, was intended to and did in fact tacitly revoke and supersede the earlier agreement of November 6, 1943, and was an executory agreement to *74 buy and sell upon the happening of a future contingency, which contingency did not occur in 1943. Held, further, no sale of petitioners' partnership interests having been consummated in 1943, their distributive shares of partnership income as of December 31, 1943, is [are] taxable to them as ordinary income. Robert E. Teaford, Esq., for the petitioners. Elmer E. Lyon, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income taxes of petitioners for years and in amounts, as follows: Docket
Name
Number
Year
Amount
John K. Teaford
25860
1943
$164,070.90
1944
43,980.47
1945
1,334.00
Seleen Teaford Trust
30578
1943
6,013.83
1944
23.31
Joan K. Teaford
Trust
30593
1942
224.44
1943
13,044.74
1944
171.36
Joan K. Teaford
Trust #2
30594
1943
6,013.83
1944
23.31
Shirley Lee Teaford
Trust
30595
1942
224.44
1943
13,044.74
1944
171.36
Shirley Lee Teaford
Trust #2
30596
1943
6,013.83
1944
23.31
Most of the issues raised in the pleadings have been resolved. There remain only the questions - 1. Whether the aggregate amount received by petitioners upon the "sale" or "dissolution" of their interest in the partnership d/b/a Teaford, Danches & Company is taxable to them as capital gain *75 or as ordinary income; and 2. Whether petitioner John K. Teaford's distributive share of the gross gain thus realized was overstated by an amount allegedly given to the continuing partners as a side consideration. Findings of Fact The stipulation of facts filed by the parties with exhibits attached is adopted, and, by this reference, made a part hereof. The petitioners are John K. Teaford, Seleen Teaford Trust, Joan K. Teaford Trust, Joan K. Teaford Trust No. 2, Shirley Lee Teaford Trust, and Shirley Lee Teaford Trust No. 2. The tax returns for the years involved in each proceeding were filed by the respective petitioners with the collector of internal revenue for the district of Indiana. The individual petitioner, John K. Teaford, will hereinafter sometimes be referred to as the petitioner. On January 2, 1943, petitioner, Joan K. Teaford Trust and Shirley Lee Teaford Trust, entered into a partnership agreement with the Danches Brothers Company, a partnership, Abe Danches, Robert E. Teaford, Sara K. Tibbetts, Wealthy Westfall, Christa M. Stentzel and Cyril E. Teaford, which agreement provided, among other things, that petitioner would contribute $84,200.88 to and would receive or bear *76 15 per cent of the profits or losses of a partnership to be known as Teaford, Danches and Company; that the Joan Kay Teaford Trust would contribute $28,066.96 and would receive or bear 5 per cent of the profits or losses of such partnership; and that the Shirley Lee Teaford Trust would contribute $28,066.96 and would receive or bear 5 per cent of the profits or losses of the partnership. Teaford, Danches and Company (hereinafter sometimes referred to as the partnership) was owned equally by two factions, the Teaford group and the Danches group. The Teaford faction was composed of the 25 per cent interest owned by petitioners herein and another 25 per cent interest which was owned by persons not involved in these proceedings. The individual petitioner, Teaford, was the only active partner among the Teaford group and acted as general agent therefor. He was paid a salary of $12,000 a year for his services to the partnership in connection with its business of manufacturing dried egg products to be sold to the government, as successor of Silvers, Danches and Company. The partnership continued to operate pursuant to the foregoing partnership agreement of January 2, 1943, until August 1, *77 1943, on which date petitioner transferred by deed of gift two-thirds of his interest in the partnership, as follows: To Joan K. Teaford Trust #2
3 1/3%
To Shirley Lee Teaford Trust #2
3 1/3%
To Seleen Teaford Trust
3 1/3% After the above transfers in trust were effected, petitioner was left with a 5 per cent interest in the partnership which otherwise continued its operation the same as it had under the aforementioned agreement of January 2, 1943. Prior to these transfers, petitioner had an accounting firm make an audit of the partnership's books with respect to the capital accounts and profits and losses to establish a value for his interest. As of July 31, 1943, the partnership had accrued earnings for the seven-month period of $318,972.37. Of this amount, 15 per cent, or approximately $47,845.55, was accrued to petitioner and 5 per cent, or approximately $15,948.62 each was respectively attributable to the Joan K. Teaford Trust and Shirley Lee Teaford Trust. During the period August 1, 1943, to November 18, 1943, the amount of $228,013.81 was divided among the Teaford group of partners. Petitioner, Shirley Lee Teaford Trust and Joan K. Teaford Trust each received the total sum of $22,801.38. *78 Shirley Lee Teaford Trust No. 2, Joan K. Teaford Trust No. 2 and Seleen Teaford Trust each received the aggregate amount of $15,200.92. On November 6, 1943, the Teaford group entered into a memorandum agreement concerning the sale of its interest to the Danches group. This agreement provided for a sale price of $387,500 over and above the Teaford group's capital investment, which amount was stated as being equal to one-half the estimated partnership profits for the year 1943. The actual profits realized by the partnership for that year were $749,915.56, one-half of which is $374,957.78. During 1943, the partnership received financing from the First National Bank of St. Louis (hereinafter called the Bank). The indebtedness of the partnership to the Bank on November 6, 1943, amounted to slightly less than $5,000,000, which amount was being regularly reduced by payments. At the close of the partnership's taxable year of December 31, 1943, the indebtedness had been reduced to approximately $3,000,000. The indebtedness was completely paid off sometime in 1944. The Bank had had unsatisfactory experience with several other egg drying concerns to which it had loaned money and, therefore, *79 sought to protect its loans to the partnership by checking its affairs in various ways. The partnership was required to submit monthly unaudited financial statements and a bank officer made periodic visits to the company. A principal factor in the making of the loans was the Bank's reliance on petitioner's personal reputation and executive ability. Upon being advised of the agreement of November 6, the Bank threatened to foreclose its loans to the partnership unless the parties thereto agreed to modify the terms thereof in compliance with the Bank's demands. A modified agreement was accordingly entered into by the two factions on November 18, 1943, pertinent portions of which follows: "SECTION 1 "The partnership of Teaford, Danches & Co., as now constituted shall continue until the First National Bank in St. Louis, Missouri shall in its uncontrolled discretion, consent to the dissolution of the partnership, or until all of the indebtedness of said partnership to said First National Bank in St. Louis, shall have been paid, said consent not being required after said indebtedness is paid in full. "SECTION 2 "The Parties of the First part [the Teaford faction] hereby agree to sell, upon *80 dissolution of said partnership and the Parties of the Second Part [the Danches faction] hereby agree to purchase upon dissolution of said partnership, * * *. "SECTION 3 "Parties of the Second Part hereby agree to pay to Parties of the First Part at the time and times hereinafter mentioned, in full payment for all of the interest of the Parties of the First Part in and to said firm of Teaford, Danches & Co., upon the dissolution thereof, the sum of Three Hundred and Eighty-Seven Thousand, Five Hundred ($387,500.00) Dollars, estimated to be fifty (50%) per cent of the net profits of said partnership for the year 1943, and in addition thereto the capital investment of the Parties of the First Part in said partnership of Teaford, Danches & Co. as of the first day of January, 1943, * * *. "SECTION 4 "It is expressly understood and agreed, however, that said Parties of the First Part shall have no other and further interest in the partnership profits now or hereafter accruing of Teaford, Danches & Co., except to receive the sum of Three Hundred and Eighty-Seven Thousand Five Hundred Dollars ($387,500.00), and that any and all profits in excess of said sum shall be paid to the Parties *81 of the Second Part, and if said profits do not amount to said sum, then such deficit shall be borne by Parties of the Second Part. * * *
"SECTION 7 "Parties of the First and Second Parts agree that on or before December 15, 1943, there shall be paid out of the partnership assets of Teaford, Danches & Co. to Parties of the First Part an amount sufficient to enable Parties of the First Part to pay their income taxes due on said date, which sums when paid, shall be credited against the consideration the Parties of the First Part are to receive for their interest in said firm of Teaford, Danches & Co., upon the dissolution of said firm. Parties of the Second Part agree that on or before March 15, 1944, they will likewise pay to Parties of the First Part, either out of the assets of the firm of Teaford, Danches & Co., if said firm shall then be in existence, or out of other assets of the Parties of the Second Part, a sum sufficient to enable the Parties of the First Part to pay their income taxes due on March 15, 1944, which sum shall be credited against the consideration the Parties of the Second Part agree to pay to the Parties of the First Part for the interest of the Parties of the *82 First Part in the firm of Teaford, Danches & Co., upon the dissolution of said firm of Teaford, Danches & Co. Parties of the Second Part agree that on or before March 31, 1944, they will pay to Parties of the First Part the balance of the consideration due for the purchase of the interest of Parties of the First Part in the firm of Teaford, Danches & Co., upon the dissolution of said firm. The Parties of the Second Part shall likewise have the right to withdraw from the assets of the firm of Teaford, Danches & Co., or the assets coming into their hands upon the dissolution of said firm of Teaford, Danches & Co., sums sufficient to pay on or before December 15, 1943, and March 15, 1944, the income taxes of said Parties of the Second Part. It is expressly agreed, however, that nothing herein contained shall give to either Parties of the First Part or Parties of the Second Part, the right to withdraw any assets from said firm of Teaford, Danches & Co., if the withdrawal of assets from said firm would violate any of the provisions of the agreement heretobefore [sic] entered into between said firm of Teaford, Danches & Co., and First National Bank in St. Louis, providing for loans by said *83 First National Bank in St. Louis to said firm of Teaford, Danches & Co., which agreement is dated June 30, 1943. "SECTION 8 "Until the First Parties have been paid in full, all checks in the amount of Five Thousand ($5,000.00) Dollars or over, drawn on any of the bank accounts of Teaford, Danches & Co., shall be countersigned by John K. Teaford, except such checks as are drawn to the order of any bank for the purpose of retiring in whole or in part the obligation or obligations of Teaford, Danches & Co., to the drawee. "SECTION 9 "It is further understood and agreed that John K. Teaford shall continue to be employed by the Parties of the Second Part until the first of January, 1944, rendering therefor the services heretobefore [sic] rendered and shall draw therefor the same salary that he drew from Teaford, Danches & Co. It is understood and agreed that any and all salaries that have accrued to the account of John K. Teaford from Teaford, Danches & Co., as of this date shall be paid to said John K. Teaford." Each petitioner herein received a proportionate share of the $387,500 agreed upon. With the exception of the three later trusts, all petitioners reported the amounts so received *84 as long term capital gains and included only 50 per cent thereof in taxable income. The three later trusts reported the full amounts received as ordinary income. Acting in a representative capacity for all of the Teaford interests, petitioner transferred to the Danches group of partners a block of corporate stock purchased by him on or about July 8, 1943, at a cost of $10,000 and a one-half interest in a cash deposit of $30,000 held in escrow. Teaford, Danches and Company filed a partnership return for the calendar year 1943 in which was shown a total net profit of $749,915.56, and distribution among the petitioners herein as follows: John K. Teaford
$82,647.23
Seleen Teaford as trustee of the
Shirley Lee Teaford Irrevocable
Trust
38,750.00
Seleen Teaford as trustee of the
Joan K. Teaford Irrevocable
Trust
38,750.00
Seleen Teaford as trustee of the
Shirley Lee Teaford Irrevocable
Trust No. 2
15,200.92
Seleen Teaford as trustee of the
Joan K. Teaford Irrevocable
Trust No. 2
15,200.92
Robert E. Teaford and C. E. Tea-
ford as Trustees of the Seleen
Teaford Irrevocable Trust
15,200.92
The Commissioner, in the notices of deficiencies, determined that the amounts received by each of these petitioners represented *85 distribution of earnings from the partnership of 1943, and that the full amounts were taxable as ordinary income. Opinion VAN FOSSAN, Judge: The principal issue before us involves the proper tax treatment to be accorded the amount received by the Teaford faction from the Danches faction as a result of the November 1943 agreements. Specifically, the question raised is whether the proportionate shares of such amount respectively received by the six petitioners herein constituted capital gains or ordinary income. Respondent has determined the latter. Petitioners each owned fractional interests in a partnership which had accumulated a substantial amount of ordinary income in 1943. On November 6, 1943, petitioners, together with other members of the socalled Teaford faction, collectively entered into a written agreement relating to the sale of their interests to the Danches group of partners. The Bank, to which the partnership was heavily indebted, when advised of the agreement, refused to consent to it and insisted upon the parties entering into a new agreement which provided for the continuance of the partnership as it was then constituted until the Bank, in its uncontrolled discretion, *86 consented to the dissolution thereof or until the partnership's indebtedness to the Bank was paid in full. The parties thereupon entered into such an agreement on November 18, 1943. Under both agreements the consideration to the selling parties was $387,500 over and above the aggregate of their capital investment. Both writings stated that such amount was half of the partnership's estimated net income for 1943. The actual net income realized by the partnership in that year was a few thousand dollars less than the amount thus estimated. Respondent's determination that each petitioner's distributive share of the foregoing amount of $387,500 is taxable as ordinary income rather than as capital gain is based upon the theory that such amounts represented a distribution of partnership earnings accrued or accumulated in 1943. In defense of his determination, respondent advances a twofold argument. First he maintains that no completed sale of the partnership's interest was concluded in 1943 and that, this being true, the income of the partnership accrued normally to the respective partners at the close of the taxable year 1943 pursuant to section 182(c) of the Internal Revenue Code of 1939 *87 [1] and is taxable to them as ordinary income under the provisions of section 22(a) of the 1939 Code. [2] *88 But, in any event, respondent insists, even if the sale be considered as having occurred in 1943, the aggregate of the amount received over and above the amount of capital investment in the form of consideration, nevertheless, actually represented accumulated partnership income for that year and as such is taxable as ordinary income. It is petitioners' position that the sale of their interests in the partnership was effectuated within the year 1943 in accordance with the agreement of November 6; that these interests were capital assets; that the amounts received by them by virtue of such agreement represented consideration for the sale of these capital assets; and that, therefore, the gain realized by each is properly taxable as capital gains under section 117(b) of the 1939 Code. [3]
We do not find it necessary to rule on petitioners' contention that all their interests in the partnership represented capital assets (see H. R. Smith, 10 T.C. 398; *89 Swiren v. Commissioner, 183 Fed. (2d) 656, since we do not agree that a final sale of the interests in question was consummated in 1943. Both parties were well aware of the partnership's indebtedness to the Bank. Moreover, as shown by their attempt shortly after the execution of the November 6 agreement to obtain the Bank's acquiescence therein, both also knew that the Bank's consent was a necessary prerequisite to any sale. The fact that no completed sale actually occurred in November 1943 is further borne out by the Bank's refusal to condone the November 6 memorandum and by its insistence that the parties enter into the agreement of November 18 providing for a continuation of the partnership as then composed until its indebtedness was retired. The evidence bearing upon the execution of the later agreement in light of the attendant circumstances and the express terms of the agreement lead us to the firm conclusion that the parties thereto intended it to be the sole and complete statement of the terms of sale and to embody the entire agreement between them; that it tacitly rescinded and did, in fact, supersede the earlier agreement. The later agreement expressly stipulated that the *90 time of the sale was to be postponed until the Bank consented or until the partnership's indebtedness was retired, which occurred in 1944. It was, therefore, an executory agreement to buy and to sell upon the happening of a future contingency. Such contingency did not occur in 1943. Therefore, no sale of petitioners' partnership interests was completed in 1943. Thus it is that upon the close of the partnership's taxable year on December 31, 1943, its ordinary net income for such year accrued, distributive shares of which were respectively taxable as ordinary income to the partners whether or not distribution had, in fact, been made. See section 182(c), supra. It should be noted that half the net income actually realized by the partnership in 1943 was $374,957.78, or $12,542.22 less than the $387,500 previously estimated and here in dispute. This being true, only petitioners' distributive shares of the partnership's income actually accruing in 1943 are taxable to them as ordinary income. Their proportionate distributive shares of the additional $12,542.22 received is taxable to them respectively as capital gains when received. The next question involves petitioner's contention that *91 his distributive share of the amount received by the Teaford faction should be reduced by the sum of $25,000. This figure represents the value of certain assets, individually owned by him, which he transferred to the buying partners. One such asset was a block of stock shares of an unrelated corporation having a cost basis of $10,000. Another was a right to half of a $30,000 cash deposit held in escrow. With regard to the former item, we agree with respondent that the evidence shows petitioner to have been acting in a representative capacity for the entire Teaford faction at the time he transferred such stock and that he may, therefore, look to the members thereof for a proportionate reimbursement. Since this is true, petitioner's distributive share of the income in question is properly to be decreased by $1,000, which amount is consistent with the 5 per cent partnership interest he then owned. As to the latter item, i.e., the right to half of the $30,000 cash deposit held in escrow, no question with respect thereto has been raised in the pleadings. We have frequently held that we will not, and cannot, consider questions not pleaded. Samuel E. Hirsch, 16 T.C. 1275. We, therefore, *92 do not undertake any consideration of this issue. An additional issue raised in the pleadings as to whether petitioner is taxable upon 15 per cent of the partnership's profits accrued for 1943 up to August 1, 1943, upon which date he transferred 10 per cent of his interest to Seleen Teaford Trust, Joan K. Teaford Trust No. 2, and Shirley Lee Teaford Trust No. 2, is not briefed and has apparently been abandoned. Decisions will be entered under Rule 50. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Seleen Teaford Trust, Robert E. Teaford and C. E. Teaford, Trustees, Docket No. 30578; Joan K. Teaford Irrevocable Trust, as amended, Seleen Teaford, Trustee, Docket No. 30593; Joan K. Teaford Irrevocable Trust #2, Seleen Teaford, Trustee, Docket No. 30594; Shirley Lee Teaford Irrevocable Trust, as amended, Seleen Teaford, Trustee, Docket No. 30595; and Shirley Lee Teaford, Irrevocable Trust #2, Seleen Teaford, Trustee, Docket No. 30596.↩
1. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b). ↩
2. SEC. 22. GROSSINCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *
3. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(b) Percentage Taken Into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income: 100 per centum if the capital asset has been held for not more than 6 months; 50 per centum if the capital asset has been held for more than 6 months.↩